[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION #114 MOTION FOR REVIEW (PENDENTE LITE) and MOTION #123 MOTION FOR CONTEMPT[1] As to Motion #114, Motion for Review
The instant action had its genesis in a paternity petition. By way of an Agreement dated March 11, 2002, the defendant acknowledged that he is the father of the minor child that is the subject of the paternity action. The defendant furthermore agreed to pay seventy-five dollars ($75.00) per week in child support "when and if the parties live on their own." It is undisputed that they are currently living on their own. It is also undisputed that at the time of the hearing, the defendant was eight (8) weeks in arrears on his agreed upon child support obligation.
On August 19, 2002, the plaintiff moved this Court to appoint a guardian ad 1 item for the party's minor child. The Court granted the motion on that same date. Subsequently Attorney Cousineau was appointed as the guardian ad litem of the minor child.
Although the parties had previously agreed to a shared custody arrangement, the relationship between them has deteriorated significantly since the summer of 2002. The more credible and convincing evidence persuades this Court that due to the state of the relationship of the parties, the age of the minor, and the distance of travel and the stress created by traveling from one residence to the other, it is not in the best interest of the minor child for the shared custody arrangement to CT Page 1233 continue. The Court further finds that such an arrangement should not be reconsidered again until after the completion of a full parenting study by Family Services.
After hearing all of the evidence in this matter, this Court has determined that it is the best interest of the child to enter parenting orders that more closely resemble a normal visitation schedule of every other weekend and one weekday overnight. However the Court also takes into consideration that the evidence presented at the hearing proves that the defendant father has been very attentive the needs of the minor child and his presence has enriched the child's life. Additionally the Court notes that the minor child has a half-brother with whom he has developed a close relationship. The Court finds that it is in the best interest of the minor child to enter orders that recognize that there is a need to afford time in which the brothers can continue to bond with each other and therefore the court enters orders as follows:
 1) The primary residence of the minor child shall temporarily be with his mother; and
 2) The defendant shall have reasonable, flexible and liberal rights of visitation to include, but not be limited to, Wednesday evenings from 4:00 until 7:30 p. m., and alternate weekends (Friday 4:00 p. m. to Sunday 7:30 p. m.). Additionally, the defendant shall have visitation with the minor child on three additional evenings per month. The parties shall use their best efforts to set up each of the additional visits at least one week before the visit is to occur; and
 3) The parties shall exert every reasonable effort to maintain a free access and unhampered contact between the minor child and each of the parties, and to foster a feeling of affection between said child and the other party. Neither party shall do anything which may estrange the minor child from either of them, or which may hamper the free and natural development of the child's love and respect for the other parent; and
 4) The minor child shall not be left alone in the presence of his maternal grandfather.
The Court has taken into consideration that the parties are having a full custody evaluation done by Family Relations. It is the intent of this Court that the above orders shall be temporary in nature so that the child's best interests will be adequately protected until said evaluation is completed. Therefore said orders shall remain in effect until further order of the Court. CT Page 1234
 As to Motion #123, Motion for Contempt
As was previously stated herein, the instant action had its genesis in a paternity petition. By way of an Agreement dated March 11, 2002, the defendant acknowledged that he is the father of the minor child that is the subject of the paternity action. Said agreement also provides in pertinent part that:
 2. The defendant Robert Lacombe will pay $75.00 a week child support when and if the parties live on their own.
Credible and convincing evidence was presented during the hearing of this matter
that parties no longer share a common residence. It is also undisputed that at the time of the hearing, the defendant was eight (8) weeks in arrears on his agreed upon child support obligation.
The movant in this matter asserts that the defendant is in contempt of Court by not paying child support as provided for in the Agreement. The movant further asserts that the nonpayments span an eight (8) week period.
 In a civil contempt proceeding, the movant has the burden of establishing, by a preponderance of the evidence, the existence of a court order and noncompliance with that order. See Potter v. Board of Selectmen, 174 Conn. 195, 197, 384 A.2d 369 (1978); Duve v. Duve, 25 Conn. App. 262, 269, 594 A.2d 473, cert. denied, 220 Conn. 911, 597 A.2d 332 (1991), cert. denied, 502 U.S. 1114, 112 S.Ct. 1224, 117 L.Ed.2d 460 (1992).
 Statewide Grievance Committee v. Zadora, 62 Conn. App. 828, 832 (2001).
A review of the file indicates that on March 11, 2002, the Court (Wolven, J) accepted the aforementioned Agreement of the Parties and entered orders accordingly.
In order to constitute contempt, a party's conduct must be wilful. Connolly v. Connolly, 191 Conn. 468, 483, 464 A.2d 837 (1983). "The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . CT Page 1235 . . One cannot be placed in contempt for failure to read the court's mind." (Citations omitted; internal quotation marks omitted.) Blaydes v. Blaydes, 187 Conn. 464, 467, 446 A.2d 825 (1982). A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. "It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." Marcil v. Marcil, 4 Conn. App. 403, 405, 494 A.2d 620 (1985).
Eldridge v. Eldridge, 244 Conn. 523, 529 (1998).
The evidence presented at the hearing indicates that it is undisputed that the current child support arrearage is six hundred dollars ($600.00).[2] Accordingly, this Court finds the arrearage to be six hundred dollars ($600.00).
The defendant had actual notice of the Court's Orders concerning the payment of seventy-five dollars per week in child support.
The defendant does not deny that he has not paid the subject payments. Instead he asserts that the parties have a large common debt between them. The defendant further asserts that due to the fact that he was making payments on said debt he was unable to make the payments called for in the Agreement.
Upon completing the review of the defendant's financial affidavit, the Court notes that the defendant's net income is two hundred and eighty three dollars ($283.00). The Court also notes that his expenses significantly exceed his weekly income.
 "[A] finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases. . . . Billings v. Billings, 54 Conn. App. 142, 152, 732 A.2d 814 (1999).
CT Page 1236
Legnos v. Legnos, 70 Conn. App. 349, 352 (2002).
Taking into consideration the totality of the circumstances, this Court does not find the defendant's nonpayment of the child support to be willfully contemptuous. However, the Court strongly admonishes the defendant and reminds him that his child support obligations have priority over all of his other financial obligations.
The Court further finds that the spirit of the Support Agreement has not been met. The Court is therefore of the position that a remedy must be fashioned in order to protect the subject Court order.
 "[I]t is . . . within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] [orders]." (Internal quotation marks omitted.) Clement v. Clement, 34 Conn. App. 641, 646, 643 A.2d 874 (1994).
 Santoro v. Santoro, 70 Conn. App. 212, 217 (2002).
The Court orders as follows:
 1. The defendant shall pay the entire arrearage amount of six hundred dollars. Said payment to be made in accordance with the standard child support guidelines arrearage amount of twenty percent (20%) of the current weekly support order of seventy-five dollars ($75.00) until said arrearage is paid in full. Therefore the total child support obligation shall now be ninety dollars ($90.00) per week until the arrearage is paid in full or until further order of this Court.
 2. The defendant shall pay the plaintiff the additional sum of one hundred and twenty dollars ($120.00) to defray the costs and fees incurred by her in enforcing the provisions of the Agreement. Said payment to be made within ninety (60) days of the filing date of this decision.
 ___________________ Richard Allan Robinson, J January 23, 2003